Theodore H. Paoli and Enid E. Paoli v. Commissioner.
Paoli v. Commissioner
Docket No. 4452-69.
United States Tax Court
T.C. Memo 1971-154; 1971 Tax Ct. Memo LEXIS 177; 30 T.C.M. (CCH) 662; T.C.M. (RIA) 71154; June 28, 1971, Filed. *178 Gino P. Cecchi, 595 Golden Gate Ave., San Francisco, Calif., for the petitioners. Joel A. Sharon, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1964, 1965, and 1966 in the amounts of $1,944.11, $2,283.61 and $1,904.04, respectively. The questions for our determination are: (1) Are petitioners entitled to deduct dues and other expenses incurred at the Olympic Club as promotional expenses and therefore as ordinary and necessary business expenses under section 162, I.R.C. 1954? [1]
(2) Are petitioners entitled to deduct expenses for entertainment of patients and other doctors at various restaurants, theaters, and at their home as ordinary and necessary business expenses under section 162? (3) If the above expenses are business expenses as opposed to nondeductible personal expenses, did petitioners substantiate the expenditures in accordance with the requirements of section 274? Findings of Fact Theodore H. Paoli (hereinafter referred to as petitioner) *179 and his wife, Enid, at the time of filing the petition in this case resided in San Francisco, California. They filed joint Federal income tax returns for the calendar years 1964, 1965, and 1966 with the district director of internal revenue in San Francisco, California. Petitioner is a medical doctor. He began the general practice of medicine in 1936 and during the years 1964, 1965, and 1966 maintained his medical office in Daly City, California. Since about 1955 and during the years in issue petitioner was a member of the Olympic Club which is a social and golf club offering a variety of athletic, rcereational and dining facilities. The "in town" club is located in downtown San Francisco and contains social and dining facilities with a lunchroom, dining room, gymnasium, basketball courts, handball courts, swimming pool, pool tables and other recreational facilities. The Olympic Country Club is located at the adjoining borders of San Francisco County and San Mateo County with part of it located in the city of San Francisco and part located in Daly City. To the west the club is bordered by the Pacific Ocean and to the north and east it is bordered by Lake Mercer. In addition to *180 the two golf courses, the Olympic Country Club has available for its members a swimming pool, showers, steam room, massage facilities, luncheon bar between the ninth and tenth holes, a large dining room, a cocktail bar, ballroom, tennis courts, a professional golf shop, a barber shop, parking facilities, gas pumps, and car wash facilities. During 1964, 1965, and 1966 petitioner and his family were members of both the "in town" club and the Olympic Country Club. They rarely used the "in town" facilities. Petitioner's wife and three children seldom used any of the Olympic Club facilities. Petitioner's home, his office, and the Olympic Country Club were located in the same vicinity with no more than 4 to 5 minutes driving time required between any two of the three points. Petitioner used the country club facilities, especially the golf course, as often as he could. On Wednesdays, his day off, he remained at the club all day, playing golf with a foursome in the morning. On Wednesday morning a small group of members generally met choosing foursomes at random. Petitioner had known most of the members of this group for several years. On Wednesday afternoons petitioner usually sat around *181 the clubhouse and played gin, dominoes or talked with other club members. Whenever he could, petitioner also played golf on Sundays and holidays. Because he never knew when he would be able to play, petitioner played golf with whoever was available at the time he was ready to play. In addition to the times he played golf, petitioner visited the club for an hour or two whenever his schedule permitted. Some members of the Olympic Club became patients of petitioner. Sometimes those members who were his patients would seek and receive advice from petitioner when they met him at the club. If an office examination was not required, petitioner would sometimes write out a prescription there at the club. In addition, in case of an emergency at the club petitioner or any other doctor there at the time would render emergency treatment using a doctor's kit owned and maintained by the club. Members of the Olympic Club have on a number of occasions referred members of their families, employees of their businesses, and other persons to petitioner for medical services. Sometimes petitioner purchased his breakfast or lunch at the club. He very rarely bought lunch for a patient or a prospective *182 patient. He did buy drinks for members on various occasions and on other occasions they purchased drinks for him. When in a group he sometimes would pay for a round of drinks, sometimes another member would pay, and at other times a roll of the dice would determine who would pay. Petitioner did not use the Olympic Club to entertain his patients or his prospective patients. Petitioner generally had his hair cut in the club's barber shop, purchased gas and had his car washed at the club's facilities, and purchased his golf supplies, including golf balls and golf gloves, at the pro shop. He paid a monthly fee to have his golf clubs stored at the club. At Christmastime he purchased from the club's liquor concession bottles of liquor to give to the attendants in the locker room. All of these items were billed to petitioner at the end of the month by "chits" which he signed. Petitioner's club dues were approximately $60 each month during the years in issue. The following chart shows the total expenses incurred by petitioner at the club during the years 1964, 1965, and 1966: Expense
1964
1965
1966
Food
$ 173.55
$ 226.19
$ 173.45
Liquor
268.70
358.18
383.95
Caddy fees or golf cart rental
586.55
683.82
629.45
Club dues
725.52
739.92
742.92
Telephone
16.76
20.16
13.07
Barber
57.75
57.50
50.00
Pro shop (golf supplies)
94.15
143.75
131.45
Auto - gas
40.55
11.40
26.80
[1] NCGA dues
3.00
60.00
[1]WG Fund 9.00
Totals
$1,975.53
$2,300.92
$2,151.09
*183 Except for the first 4 months of 1964 for which he only deducted one-half of his club fees and expenses, petitioner deducted all club dues and expenses incurred there as promotional or entertainment expenses. During 1964, 1965, and 1966 petitioner and his wife, Enid, entertained in their home, at various restaurants, theaters, and other social events. In 1964 petitioner had a party for five doctors and their wives at the 365 Club (Bimbos), a restaurant with a live floor show and orchestra. The total cost estimated by Enid was $326, consisting of $281 for dinner at the 365 Club, $20 for cocktails at home, $15 for hors d'oeuvres, and $10 for maid service. In May 1964 petitioners had a dinner party for some of their "friends and associates." Enid estimated the cost of this party at $300. Petitioners entertained 11 couples composed of doctors and patients and their spouses at a party at their home on New Year's Eve 1964, and estimated the cost of the dinner at $600 based on what a similar dinner would have cost if catered. Enid prepared the food for the party. Maid services for the party were estimated at $20. In *184 1964 petitioners made various gifts at a total cost of $481. In March of 1965 petitioners entertained a patient at golf and dinner for an estimated cost of $35. In April they took "R. DeGrio" to dinner to discuss an investment which they had in Alleghany. The estimated cost was $20. In May petitioner and the doctors associated with him entertained their office staff and some patients at a Luau with petitioner's estimated allocable cost being $20. Also in May 1965 petitioner took a patient to the New Southern Restaurant for an estimated cost of $25. In July at an estimated cost of $50 petitioner entertained a patient at golf and dinner. In August some doctors and their wives were entertained by petitioner for dinner at Tiburon for an estimated cost of $50. For 1966 the following chart shows the entertainment expenses incurred by petitioners: Date
Entertainment
Estimated costs
1966
Mar. 4
Luncheon and fashion show - attended by wives of doctors
$ 60.00
Apr. 16
University of San Francisco Alumni Banquet attended by doc- tors, patients and their spouses and two priests
115.00
Apr. 27
Race Day dinner with petitioner's associate after race
21.00
May 14
Fuchia Ball - function of hospital - associate doctors and wives
90.00
June 8
Circle Star theater tickets - associate doctor
20.00
July 13
Dinner at 365 Club (a theater club) for associate doctor and patient and spouses
101.16
Sept. 9
Dinner for two doctors and a patient
$ 50.00
Oct. 15
Loyola Guild Fashion Show - attended by wives of doctors
24.00
Nov. 6
Theater tickets for doctor associates and wives
39.00
Dec. 17
Buffet supper and cocktails at home for doctors, patients and spouses (19 guests) 380.00
Total
$900.16
*185 Patients and doctors who were entertained by petitioners were members of their social circle and reciprocated by entertaining petitioners. Although Enid kept a "calendar" or "date book" on which she made notations of petitioners' social engagements and occasionally the names of the persons who entertained petitioners or were entertained by them, neither petitioner maintained any book or diary noting the cost of any entertainment, the names of all persons entertained, business discussed at the function, or the business purpose of the entertainment. Petitioner also paid dues for a hunting lodge for the years 1964, 1965, and 1966 in the amounts of $24.07, $60, and $100, respectively. In 1965 petitioner paid $100 in dues for a duck hunting lodge. Some of the hunting lodge members were petitioner's patients and some of them were members of the Olympic Country Club. In 1965 petitioner paid $200 in fees to participate in the Nugget Classic, an invitational golf tournament which was attended by many of petitioner's patients and many members of the Olympic Country Club. Petitioners on their income tax returns for the years 1964, 1965, and 1966, claimed deductions for dues and *186 subscriptions, promotional expenses, and entertainment in the following amounts: 1964
1965
1966
Dues and subscriptions
$2,539.25
$ 902.72
$2,690.99
Promotional expenses
2,178.18
Entertainment expense
3,158.92
2,178.41
Respondent in his notice of deficiency disallowed the following amounts of these claimed expenses for the years indicated: 1964
1965
1966
Dues and subscriptions
[1] $1,559.46
[2] $ 360.00
[3] $2,131.17
Promotional expenses
[4] 2,051.18
Entertainment expense
[5] 3,108.92
[6] 1,390.29
*187 Respondent explained his disallowances in the notice of deficiency by stating that they were to eliminate those portions of various expenses which were personal in nature or had been established to qualify as ordinary and necessary business expenses, and in the case of promotional and entertainment expenses had not been substantiated as required by section 274. Opinion Section 162 provides for the deduction of ordinary and necessary expenses paid or incurred in carrying on a trade or business. However section 274 limits deductions of amounts otherwise allowable as a deduction under section 162 with respect to an activity generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such activity, or for gifts, to items substantiated by adequate records or evidence corroborating the taxpayer's statement showing the amount of the expense, the time and place of the entertainment or use of the facility, and the description of the gift as well as the business purpose of the expense and business relationship to the taxpayer of the person entertained, using the facility, or receiving the gift. In our view *188 petitioners have not only failed to substantiate their claimed deductions in accordance with the provisions of section 274 but with respect to most of such claimed deductions have failed to show that the expenditure was not personal rather than a business expense. Petitioner was the principal user of the Olympic Country Club. He played golf there every Wednesday morning and usually on Sundays. On Wednesday afternoons petitioner played gin or dominoes at the club or just talked with other members. Petitioner did not use the Olympic Club to entertain his patients or prospective patients. In our view the evidence shows that petitioner's expenses at the Olympic Club were personal expenses primarily for his personal recreation. Petitioner, however, contends that his membership and presence at the Olympic Club "promoted" his business as a doctor by giving members of the club an opportunity to get to know him so that they might recommend him as a doctor to their families, employees, and acquaintances. He contends that for this reason these expenses should be deductible and that section 274 is not applicable to the claimed deductions. In our view, even if petitioner had shown that some *189 portion of his Olympic Club expenses was "otherwise allowable," such expenses must be considered as entertainment expenses under section 274 and section 1.274-2(b)(1)(ii), Income Tax Regs., and must be substantiated in accordance with the requirements of section 274. Section 1.274-2(b)(1)(ii), Income Tax Regs., provides in part as follows: (ii) Objective test. An objective test shall be used to determine whether an activity is of a type generally considered to constitute entertainment. Thus, if an activity is generally considered to be entertainment, it will constitute entertainment for purposes of this section and section 274(a) regardless of whether the expenditure can also be described otherwise, and even though the expenditure relates to the taxpayer alone. This objective test precludes arguments such as that "entertainment" means only entertainment of others or that an expenditure for entertainment should be characterized as an expenditure for advertising or public relations. We held in William Andress, Jr., 51 T.C. 863 (1969), affirmed per curiam 423 F. 2d 679 (C.A. 5, 1970), that the above cited *190 regulation is valid and that activities that are promotional in character but are generally considered as entertainment must ordinarily meet the requirements of section 274(a)(1) and 274(d). In William Andress, Jr., an attorney sought to take a "promotional and courtesy" expense deductions for dues to a club and amounts spent at that club on the theory that the expenses were not entertainment expenses, and therefore, not subject to section 274. We held that such expense must meet the requirement of section 274(a) and 274(d). In order for dues to the Olympic Club to be deductible under section 274(a)[2] that club must be shown to have been used primarily for the furtherance of petitioner's trade or business. Most of the expenses incurred by petitioner at the Club were personal in nature. These expenses 667 include such things as haircuts, golfing equipment, and an occasional breakfast or luncheon for petitioner. Personal items of this type which are not shown to be different from or in excess of amounts a taxpayer would normally have spent on himself are personal rather than business expenses under section 162. Richard A. Sutter, 21 T.C. 170, 173 (1953). Petitioner *191 enjoyed golf and the evidence here indicates that this was his primary reason for belonging to the Olympic Club. This club was so near his home and office that it was a logical choice of a golf club for petitioner. However, petitioner did at times buy drinks for other members of the club. Even if buying drinks for other members could otherwise be considered a business expense, petitioner has not by this showing met the requirement of section 274(a)(1)(B) that the facility be used primarily for the furtherance of the taxpayer's trade or business. Section 274(a)(1)(B) requires that for an item of expenditure at a club to be deductible, it must be shown to be directly related to the active conduct of the taxpayer's trade or business. Petitioner has not isolated any item incurred at the club as being promotional in character. The evidence in this record does not support a conclusion that on the few occasions when petitioner might purchase a drink or a lunch for the patient whom he encountered at the club, such expenditure was directly related to his practice of medicine. *192 Under section 274(d)[3] entertainment expenses such as drinks for patients and prospective patients and lunches for patients must be substantiated by adequate records or by sufficient evidence corroborating the petitioner's own statement as to (1) amount of expense; (2) time and place of entertainment; (3) business purpose; and (4) business relationship of the person entertained to petitioner. Petitioner has failed to meet the substantiation requirement of section 274(d). Petitioner has failed to establish either by adequate records or corroboration of his testimony any one of the four requirements of section 274(d) necessary to entitle him to deduct an item as entertainment expense. Petitioner testified that some of the drinks listed on the "chits" were for persons other than himself. The evidence does not establish which "chits" were for drinks for others nor who these other persons were. Consequently the evidence falls far short of satisfying section 274(d). *193 During 1964, 1965, and 1966 petitioner and his wife entertained guests at various functions at restaurants and at their home. Petitioner testified generally that the persons entertained were other doctors and/or patients. His wife testified from her "date book" in a general way to the dates of the entertainment, the persons entertained and an estimate of the cost of the entertainment. The cost estimates for home entertainment were specifically stated to be estimates. The estimates for entertainment at restaurants were stated to have been at least in some instances taken from checks, but the checks were not produced. For some of the functions she stated the name of the persons entertained and for others she stated such generalities as "doctors and their wives" or "patients." In order for expenses for entertainment to be deductible, section 274(d) requires that each item be substantiated by one of two methods. Either the taxpayer must have adequate records of the expense or evidence corroborating his own statement. Petitioners do not contend that they have adequate records, but they do contend that they have sufficient evidence corroborating 668 their own statements. The only *194 evidence in this record which relates to entertainment in 1964 and 1966 was notes made by Enid Paoli after the end of the calendar year at the time petitioners' income tax returns were being prepared for filing. These notes are nothing more than a written statement of her testimony and are not corroboration of that testimony. These notes certainly do not meet the requirement of section 1.274-5(c)(2) [4] Income Tax Regs. for "adequate records." That section specifically requires that a statement of expenses, in order to be considered "adequate records" must have been prepared in such a manner that "the element of the expenditures are recorded at or near the time of the expenditure." "At or near the time of the expenditure" means recorded at a time when, in relation to the making of an expenditure the taxpayer has full present knowledge of each element of the expenditure. Enid testified that the amount listed on her notes in some instances came from checks she had written and in the case of home entertainment her estimate of the cost was based on what she had paid per person when entertaining at an establishment. It is clear that at the time of making her notes, Enid did not have full *195 present knowledge of each element of the expenditure. *196 Petitioners have failed to meet the requirements of section 274(d) with respect to substantiation of entertainment expenses. In addition petitioners have failed to show that they are entitled to the claimed deduction under section 162. Enid stated that the "date book" was in fact a "diary of their social life," that those entertained were members of their social circle, and that the entertainment was receiprocal. While the fact that those entertained were also friends as well as business associates will not preclude the deduction, the Court will under those circumstances look closely to determine if the entertainment was in fact for business purposes or was of a personal nature which is not deductible. William F. Sanford, 50 T.C. 823, 826-827 (1968), affirmed per curiam 412 F. 2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841 (1969). Certain items for which deductions were claimed such as liquor in the amount of $108, professional gifts, Christmas cards, and miscellaneous expense either were not the subject of any testimony or other evidence or were explained as expenditures that petitioner could not remember the reason for making. Accordingly, *197 the petitioners have not sustained their burden of proof for these claimed deductions. During the years in issue petitioner also took deductions for fees and dues paid to two hunting lodges. Some of the members of the hunting lodges were also members of the Olympic Club and some were patients of petitioner. In 1965 petitioner paid $200 in fees to participate in the Nugget Classic, an invitational golf tournament, which was attended by members of the Olympic Club and some of petitioner's patients. For reasons already stated petitioner has failed to substantiate the 669 expense under section 274(d), even if he had established (which he has not) that the amounts were otherwise ordinary and necessary business expenses instead of personal expenses. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
1. These two categories were not further defined or explained.↩
1. This item consists of petitioner's entire payments to the Olympic Country Club for the months of May through December 1964. ↩
2. This amount is composed of golf tournament fees and dues to clubs other than the Olympic Country Club. ↩
3. This amount consists of petitioner's total payments to the Olympic Country Club in 1966, except for $19.92. ↩
4. This amount is composed of one-half of petitioner's total payments to the Olympic Country Club for the months of January through April 1964 plus claimed 1964 entertainment expenses at dinners and expenses for gifts (as set forth in our facts). ↩
5. This amount consists of petitioner's total payments to the Olympic Country Club in 1965 plus amounts for dinners as set forth in our findings and amounts of $492.50 for "promotional" gifts and $170.33 for Christmas cards less a $162.83 "adjustment." ↩
6. This amount consists of $900.16 for "sitdown dinners" and $490.13 for "miscellaneous" expenses.↩
2. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES (a) Entertainment, Amusement, or Recreation. - (1) In general. - No deduction otherwise allowable under this chapter shall be allowed for any item - (A) Activity. - With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with the active conduct of the taxpayer's trade or business, or (B) Facility. - With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business, and such deduction shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business. (2) Special rules. - For purposes of applying paragraph (1) - (A) Dues or fees to any social, athletic, or sporting club or organization shall be treated as items with respect to facilities. (B) An activity described in section 212↩ shall be treated as a trade or business.
3. SEC. 274(d) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item and, (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.↩
4. Sec. 1.274-5(c)(2)[Income Tax Regs.] Substantiation by adequate records - (i) In general. To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record (as provided in subdivision (ii) of this subparagraph) and documentary evidence (as provided in subdivision (iii) of this subparagraph) which, in combination, are sufficient to establish each element of an expenditure specified in paragraph (b) of this section. It is not necessary to record information in an account book, diary, statement of expense or similar record which duplicates information reflected on a receipt so long as such account book and receipt complement each other in an orderly manner. (ii) Account book, diary, etc. An account book, diary, statement of expense or similar record must be prepared or maintained in such manner that each recording of an element of an expenditure is made at or near the time of the expenditure. (a) Made at or near the time of the expenditure. For purposes of this section, the phrase "made at or near the time of the expenditure7" means the elements of an expenditure are recorded at a time when, in relation to the making of an expenditure, the taxpayer has full present knowledge of each element of the expenditure, such as the amount, time, place and business purpose of the expenditure and business relationship to the taxpayer of any person entertained. An expense account statement which is a transcription of an account book, diary, or similar record prepared or maintained in accordance with the provisions of this subdision shall be considered a record prepared or maintained in the manner prescribed in the preceding sentence if such expense account statement is submitted by an employee to his employer or by an independent contractor to his client or customer in the regular course of good business practice.↩